UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICARDO CASTILLO ESQUIVEL,<br>Petitioner,<br>v.<br>SERGIO ALBARRAN, et al.,<br>Respondents. | Case No. 26-cv-12368<br><br>**ORDER GRANTING TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. No. 3 |

Before the Court is Petitioner's Ex Parte Motion for Temporary Restraining Order ("TRO"). On October 22, 2026, Petitioner filed a Petition for Writ of Habeas Corpus and an Ex Parte Motion for Temporary Restraining Order seeking his release from custody and to enjoin Defendants from re-detaining him absent prior notice and a pre-deprivation hearing. Dkt. No. 3. For the following reasons, the TRO is GRANTED.

## I. BACKGROUND

According to the record before the Court, Petitioner first came to the United States in 1989. Pet. ¶ 22. On August 19, 2006, an immigration judge ordered him removed, on information and belief, in absentia, as Petitioner did not attend. *Id.* In 2007, Petitioner was arrested for driving without a license. *Id.* ¶ 23. When he was released from jail on that charge, ICE took him into custody. *Id.* On October 18, 2007, he was removed to Mexico. *Id.* Three months later, Petitioner returned to the United States by entering without inspection. *Id.* ¶ 24. He has lived here continuously since then, for more than eighteen years. *Id.* He lives in East Palo Alto, with an elderly man who has limited mobility. *Id.* Petitioner helps him with chores around the house. *Id.* Petitioner has four adult children, all United States citizens, and six grandchildren, also United States citizens. *Id.* ¶ 25. He provides them with financial support through steady work as a day

United States District Court
Northern District of California

laborer in construction. *Id.* He has worked for the same employer for the last seven years. *Id.*

Petitioner has four criminal convictions, one in 2004 for reckless driving, one in 2005 for driving without a license, one in 2006 for evading a peace officer, for which he served six months and nine days in jail, and a 2007 conviction for driving without a license. *Id.* ¶ 26.

On the morning of October 22, 2026, Petitioner was at a small shopping center in Palo Alto. *Id.* ¶ 29. A black SUV with tinted windows pulled up close to him. *Id.* ¶ 30. Six officers wearing uniforms with vests marked "ICE" stopped him. *Id.* The officers asked Petitioner for his name and date of birth, which he provided. *Id.* ¶ 31. They also asked for identification, which Petitioner did not have with him. *Id.* The officers said they were looking for another man who was from Oklahoma. *Id.* ¶ 32. They showed Petitioner a photo of that man. *Id.* Petitioner said he was not the man in the photo. *Id.* When asked if he had "papers," Petitioner did not answer. *Id.* ¶ 33. The officers said they were going to interrogate him to confirm whether he was the man they were looking for. *Id.* ¶ 34. They put Petitioner in a grey van, drove him to an empty parking lot, and began questioning him inside the van. *Id.* The officers asked Petitioner if he wanted to sign papers to go back to Mexico. *Id.* ¶ 35. They said they would keep him under arrest to confirm whether he was the man they were looking for. *Id.* The officers did not show Petitioner a warrant for his arrest. *Id.* ¶ 36. Petitioner was transported to the ICE San Francisco Field Officer where he remains. *Id.* ¶ 38.

## II. LEGAL STANDARD

The standard for issuing a temporary restraining order is substantially identical to the standard for issuing a preliminary injunction. *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017). Thus, a party seeking a temporary restraining order must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two Winter factors are

satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (cleaned up) (emphasis in original). "[W]hen the Government is the opposing party," the final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. A "TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing, and no longer.' " *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

**III. DISCUSSION**

Petitioner has demonstrated a likelihood of success on the merits of his procedural due process claim. Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). The Due Process Clause typically "requires some kind of a hearing before the State deprives a person of liberty." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). Immigration detention requires a showing of exigent circumstances. Respondents offer no evidence on the record that Petitioner is a flight risk or a danger to the community. These circumstances warrant issuance of a TRO. *See Ayala v. Albarran*, 2026 WL 1179862, at *4 (N.D. Cal. Apr. 30, 2026).

Petitioner has also demonstrated a likelihood of irreparable injury in the absence of temporary relief. His interest in freedom from imprisonment "lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The risk of erroneous deprivation was total: he received no process of any kind, and no neutral decisionmaker has ever found that he poses a danger or flight risk. The likely unconstitutional deprivation of liberty that Petitioner faces is an immediate and irreparable harm. Further, "[i]t is well established

that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.' " *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)); *see also Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005). "[I]t follows inexorably from [the] conclusion" that Petitioner's detention without a hearing is "likely unconstitutional" that he has "also carried [his] burden as to irreparable harm." *Hernandez*, 872 F.3d at 995.

The final two *Winter* factors, the balance of the equities and public interest, also weigh heavily in favor of granting temporary relief. "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, No. 21-cv 01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up); *see Melendres*, 695 F.3d at 1002 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (quotation omitted)); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). Meanwhile, the potential harm to the government is minimal. The Government, at most, faces a short delay in detaining Petitioner if it ultimately demonstrates his detention is necessary to prevent danger to the community or flight. *See Jorge M. F.*, 2021 WL 783561, at *3; *Diaz v. Kaiser*, No. 25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025). The government is not "harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Faced with "a conflict between [administrative] concerns and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in [Petitioner's] favor." *Hernandez*, 872 F.3d at 996) (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)). The balance of hardships thus tips decidedly in Petitioner's favor.

A TRO immediately releasing Petitioner is appropriate to return him to the status quo. *E. Bay Sanctuary Covenant*, 932 F.3d at 779. The status quo refers to "the last uncontested status which preceded the pending controversy." *Doe v. Noem*, 778 F. Supp. 3d 1151, 1166 (W.D.

United States District Court
Northern District of California

Wash. 2025) (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)). That is the moment prior to Petitioner's likely illegal detention. *See Kuzmenko v. Phillips*, No. 25 cv-00663, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025) (granting a temporary restraining order requiring immediate release of the petitioner back to home confinement from custody, as a restoration of the status quo). Because Petitioner satisfies all requirements for temporary injunctive relief and such relief is necessary to restore the status quo, the TRO application is granted as detailed below.

The requirements for issuing a TRO without notice are met here. *See* Fed. R. Civ. P. 65(b)(1). Petitioner's filings set out specific facts showing that immediate and irreparable injury, loss, or damage may result before the adverse party can be heard in opposition. *See* Fed. R. Civ. P. 65(b)(1)(A). Additionally, counsel states that they contacted counsel at the U.S. Attorney's Office for the Northern District of California on October 22, 2026. *See* Dkt. No. 3 at 2; *see also* Fed. R. Civ. P. 65(b)(1)(B).

Finally, the Court exercises its discretion under Rule 65(c) to dispense with the filing of bond. "[T]here is no realistic likelihood of harm to the [Respondents] from enjoining [their] conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). Therefore, no security is needed to ensure that Respondents will be reimbursed for "costs and damages sustained by . . . hav[ing] been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

## IV. CONCLUSION AND ORDER

For the foregoing reasons, IT IS ORDERED that:

(1) Petitioner's application is GRANTED to preserve the status quo pending further briefing and a hearing on this matter.

(2) Respondents are ORDERED to release Petitioner immediately from Respondents' custody and ENJOINED AND RESTRAINED from re-detaining Petitioner without notice and a pre-deprivation hearing before a neutral decisionmaker. Respondents are ENJOINED from removing Petitioner from this judicial district, and, if they have already transferred him, are ORDERED to return him to this judicial district. Respondents are PROHIBITED from removing Petitioner from the United States until these proceedings have terminated.

(3) During the pendency of the habeas proceedings, Respondents are ENJOINED AND RESTRAINED from moving Petitioner from the jurisdiction.

(4) Respondents shall provide a status report confirming Petitioner's release by 10:00 a.m. on October 23, 2026.

(5) Respondents are ORDERED TO SHOW CAUSE in-person at a hearing in the courtroom of the assigned Judge, or as otherwise ordered by that Judge, at 9:00 a.m. on November 4, 2026, why a preliminary injunction should not issue. Respondents SHALL file a response to Petitioner's motion, and provide to Petitioner's counsel all records of Petitioner's arrest and custody, including any Form I-213, warrant, and Form I-871, together with the date and time each was executed, by no later than October 28, 2026. Any reply SHALL be filed by noon on November 2, 2026. The assigned Judge may modify this schedule as appropriate.

(6) This Order shall remain in effect until 10:09 p.m. on November 5, 2026, or as otherwise directed by the Court.

**IT IS SO ORDERED.**

Dated: October 22, 2026, 10:10 p.m.



**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**